## (November 18, 1953.)

In the Matter of the Estate of LESLIE G. BRADWELL, Deceased. NATIONAL CITY BANK OF TROY, as Trustee, et al., Appellants; CLAUDIA BRADWELL, Respondent.

*Per Curiam.* The decedent's will sets up a trust for the benefit of his wife with a direction that the income be paid to her during her lifetime and authorizing the trustee in its discretion to invade the principal to provide " for the reasonable needs and comforts " of the wife.

The trustee has done this to a very considerable extent. From the time of testator's death on November 6, 1948, to the time of this proceeding in 1952 the trustee has paid the wife $11,709 of which $7,550 was from the principal of the trust and $4,159 income. Besides this she was paid a $2,500 legacy. There is a balance of a little over $40,000 in the trust.

The wife has diabetes and a cardiac condition which greatly limit her mobility. In July, 1952, she instituted a proceeding before the Surrogate in which she called attention to her physical condition, her inability to visit her doctor and friends and to go shopping and asking that the trustee buy her an automobile.

Her prayer for relief is that the Surrogate direct the trustee to pay $2,500 for the purchase of an automobile " for the exclusive use and benefit of petitioner ". The trustee resisted the application and for some reason which does not seem clear, the Surrogate, instead of making up his own mind about this simple matter in the administration of the trust appointed a Referee to take testimony and report.

The Referee made a finding that the trustee should " furnish to the life tenant * * * any and all transportation necessary to procure medical treatment, and engage in such activities as are recommended by her personal physician including transportation to a location where the climate is more conducive to her health and well-being, and to furnish the names [sic] for her to obtain without delay any and all necessary medicines, drugs, and supplies to be used by her when the occasion arises. Such transportation shall be made available to her by said Trustee either by placing at her disposal and for her use a suitable automobile, or by providing her with sufficient funds to pay for such transportation and for the delivery without delay of medicines, drugs, or supplies as aforesaid."

While this finding of the Referee was quite different from and greatly exceeded what petitioner asked in her petition the Surrogate confirmed the report generally " without modification ". Thus, the trustee would be required to send petitioner wherever her physician recommends she be sent, to furnish her substantially unlimited transportation and to get unlimited drugs " and supplies to be used by her when the occasion arises."

In order to receive this direction as to what should be done upon this administrative matter the trustee was assessed by the Surrogate $621.50 as costs and disbursements in the proceeding, of which $400 was an allowance of costs to petitioner and $221.50 was for disbursements including $175 for the Referee's fees.

We think a reference ought not to have been granted in a matter of this kind and that the costs, which are discretionary, are a highly excessive and an undue invasion of the trust. There is some proof that it is medically advisable that petitioner be sent to a warmer climate in Florida in the winter in view of her physical condition, but any expenditures for any such purpose should be strictly limited in amount, carefully supervised, and shown by affidavit to be needed.

The order should be modified, without costs (a) by directing the payment of the amount needed for transportation to Florida and return during the winter of 1953–1954 by railroad pullman, or other adequate service, and for meals and transportation connections incidental to the trip on filing with the court an affidavit by her physician that such transportation is reasonably necessary for her physical protection; and on proof by affidavit of the amount of such expenditures, and by continuing the same direction for the winter of 1954–1955; (b) by providing for the cost of taxi transportation to her physician's office and to obtain groceries and supplies upon a like affidavit of necessity by her physician; (c) by providing that if the claims are deemed excessive the trustee may apply for directions; (d) by reducing the costs to allow the Referee $150 and the petitioner $150.

Foster, P. J., Bergan, Coon, Halpern and Imrie, JJ., concur.

Order modified, on the law and facts, without costs (a) by directing the payment of the amount needed for transportation to Florida and return during the winter of 1953–1954 by railroad pullman, or other adequate service, and for meals and transportation connections incidental to the trip on filing with the court an affidavit by her physician that such transportation is reasonably necessary for her physical protection; and on proof by affidavit of the amount of such expenditures, and by continuing the same direction for the winter of 1954–1955; (b) by providing for the cost of taxi transportation to her physician's office and to obtain groceries and supplies upon a like affidavit of necessity by her physician; (c) by providing that if the claims are deemed excessive the trustee may apply for directions; (d) by reducing the costs to allow the Referee $150 and the petitioner $150, and as so modified, affirmed.